UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEITH WAYNE FULLER,

    Plaintiff,

    v.                                                  No. 3:17-cv-00729(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Keith Wayne Fuller's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[1]

Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. # 19]. The Commissioner, in turn, has moved for an order

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

affirming her decision. [Doc. # 23]. The Undersigned heard oral argument on these motions on March 15, 2018. For the reasons discussed below, the Commissioner's decision is affirmed.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

# BACKGROUND

### a. Facts

Plaintiff filed his DIB application on January 25, 2013, alleging a disability onset date of December 2, 2011. His claim were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On February 18, 2015, a hearing was held before administrative law judge Robert A. DiBiccaro (the "ALJ"). On August 25, 2015, the ALJ issued a decision denying Plaintiff's claim. The Appeals Council denied review of the ALJ's unfavorable decision. This action followed.

Plaintiff was sixty-two years old on the date of the hearing before the ALJ. (R. 44). He has a bachelor's degree and has completed some graduate-level work. (R. 46). Plaintiff has past work experience as a community counselor and a vocational counselor. (R. 47, 57). He last worked in May 2011; he lost his job when his employer downsized. (R. 432). During the relevant period, Plaintiff primarily underwent holistic treatment methods (specifically osteopathic manipulative treatment ("OMT")[2]). (R. 65-66). Plaintiff's complete medical history is set forth in the Stipulation of Facts the parties filed. [Doc. # 19-2]. The Court adopts this Stipulation and incorporates it by reference herein.

### b. The ALJ's Decision

The ALJ followed the sequential evaluation process for assessing disability claims.[3] At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the

---

[2] This treatment "involves using the hands to diagnose, treat, and prevent illness or injury. Using OMT, [an] osteopathic physician will move [the patient's] muscles and joints using techniques including stretching, gentle pressure and resistance." *See* http://www.osteopathic.org/osteopathic-health/treatment/Pages/default.aspx.

[3] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the

alleged onset date. (R. 25-26). At Step Two, the ALJ found that Plaintiff has medically determinable impairments,[4] but that he does not have an impairment or combination of impairments that was severe. (R. 26-32). Thus, the ALJ ended the evaluation at the second step and found Plaintiff not disabled.

## DISCUSSION

The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that significantly limits the ability to perform basic work-related activities. In other words, the ALJ determined that Plaintiff does not have a severe impairment or combination of impairments.

Pursuant to the regulations, a medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. Basic work activities, or "the abilities and aptitudes necessary to do most jobs," include the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;

---

claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations. If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the last step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

[4] Specifically, the ALJ found the following medically determinable impairments: degenerative disc disease of the cervical spine; chronic upper back pain; hypertension; hyperlipidemia; migraines; and benign prostate hyperplasia. (R. 26).

4

>  (3) Understanding, carrying out, and remembering simple instructions;
>  (4) Use of judgment;
>  (5) Responding appropriately to supervision, co-workers and usual work situations; and
>  (6) Dealing with changes in a routine work setting.

*Id.* A significant amount of litigation has surrounded this regulation – commonly referred to as the "severity regulation." *See Bowen v. Yuckert*, 482 U.S. 137 (1987). In *Yuckert*, the Supreme Court concluded that the severity regulation could be valid only if it was applied solely to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing *Yuckert*, 482 U.S. at 158). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (quoting *Yuckert*, 482 U.S. at 154 n. 12); *see also* SSR 85–28; 20 C.F.R. § 404.1520a.

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While the second step is limited to screening out *de minimis* claims, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (internal quotation marks omitted). Thus, a finding of non-severe "should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Id.* (internal quotation marks omitted).

At Step Two, the ALJ must carefully evaluate the medical evidence "as to each impairment's limiting effects on the claimant's physical and mental abilities to perform basic work activities, using medical evidence to assess the effects the claimant's impairments have on the claimant's ability to complete basic work activities." *Racine v. Berryhill*, No. 15-CV-

5

0097A(F), 2017 WL 4570387, at *7 (W.D.N.Y. Sept. 12, 2017), *report and recommendation adopted sub nom. Racine v. Colvin*, No. 115-CV-00097LGFMAT, 2017 WL 4541012 (W.D.N.Y. Oct. 11, 2017) (citing S.S.R. 85-28, 1985 WL 56856, at *4 (1985)). "An ALJ's failure to account for a claimant's impairment does not normally require remand where substantial evidence supports the mere presence of the impairment, and the ALJ accounts for the impairment within the ALJ's residual functional capacity assessment." *Id.* In this case, the ALJ ended the evaluation process at the second step and did not proceed to make a residual functional capacity assessment. Consequently, the issue here is whether the Step Two determination is supported by substantial evidence. After careful consideration of Plaintiff's arguments, the Court finds the ALJ's determination that Plaintiff did not have a severe impairment or combination of impairments is supported by substantial evidence.

First, the ALJ properly weighed the opinion evidence.

Plaintiff saw Dr. Abeles for a consultative exam on April 2, 2013. Dr. Abeles noted mainly normal exam findings with "some limitation of motion of the neck." (R. 433). He concluded that Plaintiff indicated "he would return to his previous job if there was an opportunity to do so." (*Id.*). The ALJ gave this opinion "some weight," reasoning that although Dr. Abeles did not provide a function by function assessment, he detailed "his clinical observations, which revealed only minimal abnormal findings." (R. 29-30).

The State Agency Medical Consultants both opined that Plaintiff did not have any severe impairments. At the Initial Level, on April 19, 2013, Dr. Rittner concluded that Plaintiff did not have any medically determinable impairments. (R. 90). At the Reconsideration Level, on August 29, 2013, Dr. Coughlin found that Plaintiff had two medically determinable impairments (spine disorder and disorder of the male genital organ) but these impairments, alone or in

6

combination, were not severe. (R. 98). The ALJ assigned the agency opinions "significant weight," finding that they were "consistent with the longitudinal evidence of record." (R. 30, 27). The ALJ also observed that, although Plaintiff submitted additional evidence at the hearing – evidence that was not reviewed by the state agency consultants – the additional evidence did not contradict the opinions. (R. 30).

Plaintiff's primary care physician, Dr. Kehl, completed a medical source statement on November 25, 2014. (R. 496-97). Dr. Kehl opined that Plaintiff can lift and carry no more than 10 pounds frequently and 20 pounds occasionally; can sit for less than 2 hours in an 8-hour workday and stand/walk for less than 2 hours in an 8-hour workday; must move around every 30 minutes for 30 minutes; must change positions after 60 minutes of sitting and 10 minutes of standing; must be able to change positions "at will"; and needs to be able to lie down every three hours. (R. 496). Dr. Kehl indicated that there were no formal radiologic examinations and no significant/obvious clinical problems to support these limitations. (*Id.*). Dr. Kehl additionally noted that Plaintiff can occasionally twist, stoop, crouch, and climb stairs or ladders. (R. 497). When asked what medical findings supported this assessment, Dr. Kehl stated, "not observed on clinical exam." (*Id.*). Dr. Kehl also found that Plaintiff had difficulty reaching and pushing/pulling due to pain, but stated these findings were "not observed on clinical exam." (*Id.*). Dr. Kehl indicated that Plaintiff's pain would frequently interfere with the attention and concentration needed for even simple tasks, and Plaintiff would miss four or more work days per month. (*Id.*). In response to the question "When did the symptoms and limitations described in this questionnaire begin," Dr. Kehl responded "1972" and then "69" is circled next to it. (*Id.*).

The ALJ gave Dr. Kehl's opinion "little weight" because it was not supported by objective medical evidence. (R. 29). The ALJ found the opinion was inconsistent with Dr.

7

Kehl's own treatment notes, which indicate Plaintiff was in "good health." (*Id.*). The ALJ also noted that the opinion was completed with Plaintiff's assistance, which undermined its probative value. (*Id.*). Finally, the ALJ found the determination that the limitations began in 1972 implausible given Plaintiff worked full-time until he was laid off in 2011, and given Dr. Kehl's treatment of Plaintiff did not begin until 2013. (*Id.*).

Plaintiff first challenges the ALJ's evaluation of Dr. Kehl's opinion, averring that the opinion was not given the deference due to a treating source. The Court disagrees; Dr. Kehl's opinion was not entitled to controlling weight. "A medical opinion may be given significant weight only if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). The record here does not support the limitations to which Dr. Kehl opines. Treatment notes indicate no musculoskeletal abnormalities (R. 479, 484), normal exam findings (R. 494-95), and normal strength and range of motion (R. 495, 505). Moreover, Dr. Kehl observed that Plaintiff was in "good health." (R. 484). In fact, Dr. Kehl appears to specifically acknowledge that clinical findings were inconsistent with his opinion, as he stated that the limitations to which he opined were not observed on clinical exam and were not supported by significant clinical findings. (R. 496). Because the opinion is not consistent with Dr. Kehl's examination findings, the ALJ was entitled to discount it. *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (a treating source opinion is not entitled to controlling weight when inconsistent with treatment notes); *Wright v. Colvin*, No. 3:16-CV-00463 (JCH), 2017 WL 202171, at *5 (D. Conn. Jan. 18, 2017) (an ALJ can discount a treating source opinion when it was not supported by the provider's treatment notes).

In addition, the record indicates that Dr. Kehl completed the medical source statement with Plaintiff's input: treatment notes indicate the "[d]isability application was completed with Mr. Fuller's assistance." (R. 505). When "a treating source's opinion … is based primarily on a plaintiff's subjective complaints, rather than the treating source's medical observations, [it] can be afforded less weight." *Daily v. Comm'r of Soc. Sec.*, No. 714-CV-1559GTSWBC, 2016 WL 1128136, at *5 (N.D.N.Y. Feb. 29, 2016), *report and recommendation adopted*, No. 714-CV-1559GTSWBC, 2016 WL 1122067 (N.D.N.Y. Mar. 22, 2016).

Plaintiff next argues that the state agency opinions cannot constitute substantial evidence in support of the ALJ's decision because the consultants did not review the entire record. Specifically, the consultants did not examine Dr. Kehl's opinion, the OMT records, or spinal imaging studies from December 2014. The ALJ acknowledges that the consultants did not review this additional evidence, but found that these supplementary records would not undermine their opinions. (R. 30). The Court agrees with the ALJ that this additional evidence does not contradict the consultants' opinions.

The law is clear that state agency medical consultants "are highly qualified physicians … who are also experts in Social Security disability evaluation, and their opinions can override the treating sources' opinions provided they are supported by evidence in the record." *Feretti v. Colvin*, No. 3:13-CV-00753 (AVC), 2014 WL 3895921, at *4 (D. Conn. Aug. 8, 2014) (internal quotation marks and citations omitted). In other words, "[t]he ALJ is permitted to conclude that the opinion of a treating source should be given less weight than that of a non-examining source, if the opinion of the non-examining source is more consistent with the records as a whole." *Wright v. Colvin*, No. 3:16-CV-00463 (JCH), 2017 WL 202171, at *6 (D. Conn. Jan. 18, 2017).

9

Here, the ALJ did not err in giving the consultants' opinions significant weight despite their not having viewed the supplementary records. As discussed above, the reliability of Dr. Kehl's opinion is questionable; therefore, it not being reviewed by the consultants is not outcome-determinative. In addition, the OMT records do not provide a basis for undermining the consultants' opinions. The OMT records do not reveal objective evidence of physical limitations that would preclude Plaintiff from working. The records indicate some muscular tenderness but otherwise normal physical findings; the records also show that OMT had positive results in managing Plaintiff's symptoms. *See* R. 435-39, 461-62, 467-70, 473-77, 510-15.

Moreover, the December 2014 imaging studies do not controvert the consultants' opinions. The studies reveal no acute findings, only mild to moderate degenerative disc disease in the thoracic and lumbar spines, and only mild scoliosis of the lumbar spine. (R. 542-44). The ALJ considered the imaging results alongside the "objective clinical evidence that shows few clinical restrictions" in determining they did not contradict the opinions of the consultants. (R. 29).

While Plaintiff makes a fair point in arguing that no medical expert opined as to the impact these degenerative changes had on Plaintiff's ability to work, in this case, that argument cannot be the basis for remand. The imaging studies show only mild to moderate findings, and that, coupled with the record as a whole, does not provide evidence of physical limitations that would interfere with Plaintiff's ability to work.

With respect to the record as a whole, of note, Plaintiff alleges having back pain for decades, but only stopped working due to being laid off when his employer downsized. (R. 432). Even after being laid off, Plaintiff tried looking for full-time work. (*Id.*). Thus, it appears Plaintiff was able to work with his limitations. In addition, during the period at issue, Plaintiff

engaged in physical activity, or was advised to, which belies a claim of significant physical limitations. *See*, *e.g.*, R. 438 (OMT therapist advised active lifestyle and to incorporate physical activity regularly); R. 470 (OMT therapist recommended Plaintiff stay active and eat healthy and noted it seems patient is already doing this); R. 482 (Plaintiff refused to take medication to control his hyperlipidemia, and told Dr. Kehl he would instead increase his physical activity); R. 463 (Plaintiff saw Dr. Kehl for back spasm after spending a week lifting heavy boxes). Further, the record indicates that Plaintiff sought treatment specifically to support his disability claim. For example, Plaintiff told an OMT provider that "he wanted to use the OMT visits as support of his disability claim." (R. 471). Dr. Kehl's notes also indicate that Plaintiff was "attempting to acquire disability for his back pain." (R. 484). The ALJ's interpretation of this evidence – that Plaintiff "sought treatment not to improve his condition, but to generate evidence for his disability claim," and that Plaintiff had "a strong incentive to exaggerate his pain levels and physical limitations" (R. 31) – is fair. In all, the nominal objective findings support the ALJ's Step Two determination, even in light of the imaging studies. *See Bush v. Comm'r of Soc. Sec.*, No. 7:16-CV-1007 (GTS), 2017 WL 4621096, at *5-6 (N.D.N.Y. Oct. 13, 2017) (concluding ALJ's finding claimant's back impairment was not a severe impairment was supported by objective evidence including imaging showing mild degenerative changes).

In conclusion, when, as here, the record as a whole does not suggest a claimant is significant affected by his impairments, an ALJ's denial of a claim at Step Two should be upheld. *See Tinsley v. Barnhart*, No. 3:01-CV-977(DJS)(TPS), 2005 WL 1413233, at *7 (D. Conn. June 16, 2005) (upholding an ALJ's decision denying a claim at the second step when the record failed to show symptoms that would interfere with work activities).

11

## **Conclusion**

After a thorough review of the record and consideration of all of the arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  22nd  day of March, 2018, at Bridgeport, Connecticut.

      */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge